No. 27.—JAMES M. ALLEN, assignee, &c. plaintiff in error, *vs.* ARCHIBALD MATTHEWS, defendant.

[1.] A judgment *quando* binds all the estate of the defendant's testator or intestate, except such as was in the hands of the representative at the time of the judgment, or such as had been previously administered by him; and *third* persons cannot take advantage of the *form* of the judgment, to screen property in their possession from liability.

[2.] Where a plaintiff in *fi. fa.* founded on a judgment *quando*, levies on a negro claimed by a third person, proof that the negro belonged to the intestate at his death, and has never been in the possession of the administrator, nor controlled by him since his appointment, is sufficient to remove the *onus.*

Levy and claim, in Talbot Superior Court. Tried before Judge ALEXANDER, March Term, 1849.

A judgment was rendered in the Superior Court of Talbot County, in favor of the plaintiff in error, against Marion Bethune, administrator of Z. Booth, deceased, " *quando acciderint*," and execution issued thereon on 31st October, 1845. On 17th July, 1846, this execution was levied upon a negro boy named Abraham, to which negro slave a claim was regularly interposed by the defendant in error.

Upon this claim issue was joined, and the same came on for trial at the March Term, 1849, of said Court.

The plaintiff in *fi. fa.* gave in evidence his execution, and proved the levy ; and farther, that the boy, Abraham, was born the property of Zachariah Booth, deceased, in the year 1839, and was in his possession at his death in March, 1840. Possession was proven in the claimant from some time in 1841, till the time of the levy ; and it was proven that the negro boy had never been in the possession of the administrator within the knowledge of the witnesses. Plaintiff in *fi. fa.* also introduced the records of the proceedings of the Court of Ordinary of Talbot County, showing the appointment of the administrator in November, 1844, and that he had never made any returns or inventory, and nothing to show that he had ever administered upon the negro in dispute.

The plaintiff closed his case, when claimant moved to dismiss the levy, on the ground that the plaintiff had not cast the *onus probandi* on the claimant, as it appeared in the execution, that the

plaintiff's judgment was for goods and chattels, land and tene-
ments, that should come to the hands of the administrator after
the judgment, viz : 24th October, 1845 ; and the claimant having
possession of the negro since 1841, the law presumed that the
negro had been administered.

The Court sustained the motion, and ordered the levy dismis-
sed ; to which decision plaintiff excepted.

B. HILL, for plaintiff in error.

L. B. SMITH and WELLBORN, for defendant, cited—

2 *Williams on Ex'rs*, 1425, '6, 1185, 1414, 1284.   1 *Chit. Gen.
Prac.* 558, '9.   1 *Tidd*, 1017.   *Jenkins vs. Plume*, 1 *Salk.* 208.
*Mara vs. Quin*, 6 *T. R.* 1.   *McDowell vs. Branham*, 2 *Nott & Mc-
Cord*, 572.

*By the Court.*—LUMPKIN, J. delivering the opinion.

The question argued at bar, is not exactly that which is made
by the record.   Below it was insisted that the *onus* had not been
removed by the plaintiff in execution, and a motion was made and
sustained to dismiss the levy on that account.   It is now contend-
ed that the decision was right, for the reason that a judgment
*quando* cannot reach and exert a direct lien on property situated
as this is ; and that the only remedy which the plaintiff has, is to
sue out a *scire facias* against the administrator, or to bring debt
against him upon the judgment *quando*.

[1.] We think differently as to the effect of a judgment of this
description under our Judiciary.   We hold that it binds all the
property of the deceased which has not been administered, and
which was not in the possession of the representative of the es-
tate at the time of its rendition.   And why should it not?   It is
for a debt due by the deceased in his lifetime, and so far as the
assets are concerned, should be co-extensive in its lien with a gen-
eral judgment, *de bonis testatoris*, with the limitation already spe-
cified.   Of course it cannot affect property already administered,
or which was in hand at the time of its rendition ; for this would
be to subject the estate twice to its payment.   But no sufficient
reason can be assigned why it should not cover property which

has never come to the hands of the defendant to be administered. The judgment is taken in this form for the protection of the party from personal liability. But as already intimated by this Court, in *Cairns vs. Iverson*, (3 *Kelly*, 132,) the form of the judgment should not shield third persons who may have property, real or personal, in their possession belonging to the estate, and which ought in justice to go to the discharge of its debts.

It is argued that this rule would disturb the regular course of administration, and operate to defeat older and higher liens. But this can be prevented by the interposition of the representative, or of the creditor whose rights are to be prejudiced. If this course is not allowed, property will often escape, which ought to go to the payment of debts. For it is not very well settled how far executors and administrators can be made liable for property which was never in their possession, especially where the title is in dispute. In all such cases it is better, every way, that the expense and trouble should be incurred by the creditor.

Nor, on the other hand, can the claimant be injured. He can show that the property does not belong to the estate, or else that it has already been administered, or was in the hands of the representative for that purpose, at the time the judgment was obtained.

*McDowell vs. Branham and Wife*, (2 *Nott & McCord*, 512,) is supposed to be an authority against this opinion. Unfortunately this case proves too much. The argument in the case before us is, that the creditor should proceed by *scire facias* or debt on his judgment, to charge the administrator. In the Carolina case this very course was pursued. It was an action of debt on judgment of assets, *quando acciderint*, against the representatives of the estate of the debtor. It is true the negroes were in the possession of the defendants at the time the judgment was rendered; but they were included in a marriage contract between the widow and administratrix and the debtor, her deceased husband; and being considered her separate estate, were neither mentioned in the appraisement, nor stated in the accounts rendered to the Ordinary. Subsequent to the judgment *quando*, the Constitutional Court declared the marriage contract void, as to the creditors of the husband, and the property liable to the payment of his debts. McDowell was, however, held to be precluded, by the form of his judgment, from disturbing this property. Mr. Justice *Gantt*

remarked, that "At the time of taking his judgment, McDowell perhaps reflected that the property in question belonged to the administratrix before marriage, and by agreement was to have been settled upon her; that the contracting parties, from ignorance of the law, had by mistake recorded the deed of settlement in an improper office, whereby the purpose for which it was made had been frustrated; and disdaining to take an illiberal advantage against an unfortunate woman, whose support depended upon her being able to retain this little pittance, the generosity of his nature induced him to waive an advantage which, in strictness of law, he might have taken, but which justice and right seemed to forbid. I wish he had adhered to this correct dictate of a feeling heart."

While we admire the generous impulses which dictated these sentiments, they but confirm us in the propriety of the view we have taken, namely: to allow the issue to be made directly between the creditor and third persons, who, not being parties to the judgment *quando*, cannot take advantage of its form, to screen property which is confessedly liable to the payment of his debts.

*Mara vs. Quin*, (6 *T. R.* 1,) is relied upon by counsel for claimant. This was a *scire facias* upon a judgment *quando;* and while it establishes the general doctrine, which is not questioned, that as between the parties themselves, the admission of the truth of the plea of *plene administravit*, operated as a bar to the creditor claiming any other assets than those which the executor or administrator should receive afterwards, nevertheless it evinces the determination of the Court so to mould its proceedings, as to subserve the ends of right and justice. In England, if the representative receive any assets after the bringing of the action and before plea, they cannot be recovered by the creditor in that action, because the words of the declaration and the plea confine the consideration to those assets which the defendant has at the time of suing out the writ; for, say the works on pleading, *plene administravit* is no plea unless it say, at the day of purchasing the writ—here, between the time of pleading in the former action and entering up judgment, assets to the amount of £146 6s. 3d. came to the defendant's hands. And, on motion, the whole Court were unanimous in holding, that the judgment *quando* might be amended so as to cover these assets; and leave was withheld, finally, on the affidavit of the defendant, that she should be dam-

nified if the rule were granted, for that other creditors, on simple contracts, had in the meantime obtained judgments against her on account of these assets.

We deem it unnecessary to make any comments upon *Jenkins & Ux. vs. Plume*, (1 *Salk.* 207.) The only question there being, whether husband and wife, upon a nonsuit, should pay costs, where they declare upon an *indebitatus assumpsit* to them as executors, on a cause arising after testator's death. It is obvious, therefore, that there is no conflict between us and any of the precedents which have been cited.

[2.] As to the *onus*, the plaintiff proved property and possession in the decedent at the time of his death in 1840; that administration was not granted till 1844, until which time there could be no adverse possession, as there was no one capable, in law, of suing. And here he might have stopped; but he went one step farther, and showed that the slave in controversy never was in the possession of Bethune, the administrator, or in any way controlled by him. Surely this was enough to put the claimant upon the proof of his title.

The judgment must be reversed.